UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HUNTSMAN ADVANCED MATERIALS LLC,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ONEBEACON AMERICA INSURANCE COMPANY, and SPARTA INSURANCE COMPANY, formerly known as AMERICAN EMPLOYERS' INSURANCE COMPANY,<br><br>　　　　　　　Defendants. | Case No. 1:08-cv–00229-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion for Reconsideration of the Court's Denial of Their Motions for Summary Judgment and to Certify State Law Questions (Dkt. 104), Defendants' Motion to Lift Stay, or in the Alternative, for Reconsideration of Granting of Plaintiff's Motion to Stay Indemnity Portion of The Case (Dkt. 105), and Plaintiff Huntsman Advanced Materials LLC's Motion for Reconsideration (Dkt. 107). The Court heard oral argument on the motions on November 1, 2011, and now issues the following decision.

# BACKGROUND

This is an insurance coverage case. It involves claims of environmental contamination resulting from the operation of a phosphate mine in Caribou County, Idaho called the North Maybe Mine. Huntsman is the successor in interest of commercial general liability insurance policies purchased from OneBeacon in the 1960s and 70s. The environmental contaminants in this case are selenium and other related elements which have been mobilized by surface mining of phosphate at the mine.

Procedurally, this case began when the U.S. Forest Service issued a February 27, 2004 letter to Huntsman identifying Huntsman as a potentially responsible party ("PRP"). In May 2008, Huntsman filed its complaint in this matter asserting a breach of contract and seeking a declaratory judgment that OneBeacon was obligated to provide a defense and indemnify Huntsman.

Due to the Court's busy calendar, the case was reassigned to Judge Downes as a visiting judge in the District of Idaho. In February 2010, Judge Downes issued a decision granting Huntsman's motion to stay the indemnity portion of the case. In July 2011, Judge Downes issued a decision denying OneBeacon's motion for summary judgment and motion to certify questions of law, and granting in part and denying in party Huntsman's motion for partial summary judgment. The case was then reassigned back to the undersigned District Judge following Judge Downes's retirement. Both parties now seek reconsideration of at least some portions of Judge Downes' orders.

# LEGAL STANDARD

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress. The former principal has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest

injustice." *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007). If the motion to reconsider does not fall within one of these three categories, it must be denied. Here, the parties seek reconsideration of portions of an earlier order in order to correct clear error or prevent manifest injustice, or, in the case of the stay, because new evidence warrants it.

## ANALYSIS

### 1.    Motion to Reconsider Stay

On February 19, 2010, Judge Downes, writing for this Court, granted Huntsman's motion to stay the indemnity portion of this case pending completion of the RI/FS. OneBeacon asks the Court to reconsider that decision.

Judge Downes correctly explained the standard for determining whether a stay is appropriate. It is generally committed to the discretion of the district court. *Lackyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). However, citing the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936), the Ninth Circuit indicates that the Court should weigh the competing interests which will be affected by granting or refusing to grant a stay. Those interests include: (1) possible damage which may result from granting a stay; (2) the hardship or inequity a party may suffer if forced to proceed; (3) and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id*. at 1110.

Judge Downes granted the stay for the following reasons: (1) Huntsman showed a clear case of prejudice in its ability to defend the North Maybe Mine claim; (2) there was

a real potential for inconsistent results if the Court in the coverage case made decisions relating to the nature and extent of property damage at the site before those issues had been resolved in the underlying case; and (3) a stay would not prejudice OneBeacon.

OneBeacon now contends that new evidence supports lifting or reversing the stay. Specifically, OneBeacon contends that an expert's report on the Final West Ridge Operable Unite RI/FS Work Plan shows that the RI/FS will not determine when property damage occurred. OneBeacon therefore suggests that the RI/FS will not answer questions about "actual" insurance coverage, so the indemnity question should be addressed now.

Judge Downes did not base his decision on a finding that the RI/FS process would determine when property damage had occurred. Instead, Judge Downes decided that the RI/FS will likely determine whether there is evidence of contamination and the source thereof, which is critical to an educated resolution of the indemnity issue. *Order* at 7, Dkt. 81. The Court further decided that the stay would promote judicial economy because without a stay, if the indemnity issue is improperly determined in the coverage action, the Court would likely need to revisit the matter. *Id*. at p. 8.

At this point, Huntsman denies the Forest Service's allegation that its operations contaminated the site. Therefore, the crux of the stay is the difficult position Huntsman would be placed in if required to proceed with the indemnity portion of this case while denying the Forest Service's allegations against it. The Final Work Plan does not change that unenviable position. Accordingly, the stay will remain in place.

## 2.      OneBeacon's Motion for Reconsideration

In his earlier opinion, Judge Downes denied OneBeacon's motion for summary judgment. OneBeacon now asks the Court to reconsider that decision, suggesting that Judge Downes misunderstood the relief OneBeacon requested. OneBeacon essentially argues that Judge Downes failed to recognize that OneBeacon sought a determination on the question of whether Huntsman's claims are covered by the policy, and not on the question of whether the Forest Service's PRP letter raised a potential for liability.

Because Judge Downes had already stayed the indemnity issues in the case, the only real question which could have been presented by OneBeacon's motion for summary judgment was whether it owed Huntsman a duty to defend. Under these circumstances, Judge Downes got it right.

Judge Downes addressed OneBeacon's motion for summary judgment by noting that OneBeacon moved for summary judgment on the ground that Huntsman failed to prove that property damage occurred during the policy period. Judge Downes determined that OneBeacon's view was contradicted by Idaho law. He noted that the rule in Idaho is well-established: "the liability insurer's obligation to defend is to be determined by a comparison of the allegations of the [underlying] complaint to the terms of the policy." *Millers Mut. Fire Ins. Co. of Tex. V Ed Bailey, Inc.*, ,547 P.2d 1249, 1252 (1982). If the allegations in the underlying complaint, "in whole or in part and read broadly, reveal a potential for liability that would be covered," the insured must step in and assume the defense. *Exterovich v. City of Kellog*, 80 P.3d 1040,1042 (Idaho 2003). Thus, there is a difference between the duty to defend and the duty to indemnify. The duty to defend is

separate from, independent of, and broader than the duty to indemnify. *State of Idaho v. Bunker Hill Co.*, 647 F. Supp. 1064, 1068 (D. Idaho 1986) (quoting *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440 (Idaho Ct. App. 1984)). Although an insured must prove that the damages for which it seeks indemnification are covered by the policy, it does not need to prove coverage to invoke the insurer's duty to defend.

Judge Downes explained that OneBeacon had its burdens backwards. "Once it is concluded that an insurer owes its insured a duty to defend, the duty to defend and pay defense costs continues until such time as the *insurer* can show that the claim against the insured cannot be said to fall within the policy's scope of coverage." *State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D.Idaho,1986) (Italicized emphasis added). Judge Downes then explained why OneBeacon had not carried its burden in this case, and denied the motion for summary judgment.

In its motion for reconsideration, OneBeacon acknowledges the difference between the duty to defend and the duty to indemnify, but then tries to create a distinction between an "initial" duty to defend and "actual coverage." In doing so, it appears OneBeacon is trying to shift the burden of proof onto Huntsman to show that the claim against the insured falls within the policy's scope of coverage. As explained above, that is not what is required by Idaho law. If the allegations in the underlying complaint reveal a potential for liability that would be covered, the insured must step in and assume the defense. *Exterovich*, 80 P.3d at 1042. That duty remains until the insurer shows the claims against the insurer cannot be said to fall within the policy's scope of coverage. *Bunker*

*Hill Co.*, 647 F.Supp. at 1068. That cannot be determined until the RI/FS is finalized and the stay on the indemnity issue is lifted. Accordingly, the Court will not reconsider Judge Downes' earlier decision to deny OneBeacon's motion for summary judgment.

**2.      Huntsman's Motion for Reconsideration**

Huntsman's motion for reconsideration addresses several aspects of Judge Downes' order. OneBeacon also addressed some of these issues in its motion for reconsideration. The Court will address all of them under the heading of Huntsman's motion for reconsideration, with the understanding that the ruling applies to both motions for reconsideration.

**A.      *"Pre-Tender Defense Costs"***

Huntsman argues that after Judge Downes correctly determined that OneBeacon owed Huntsman a duty to defend, the Judge misapplied the rule by adopting OneBeacon's theory that Huntsman was not entitled to defense costs until after Huntsman had proven that OneBeacon's coverage defenses lacked merit. Huntsman contends that, to the extent Judge Downes held that the duty to defend does not apply because of factual disputes, Judge Downes erred. OneBeacon suggests that Judge Downes misunderstood its "pre-tender" defense costs argument.

A brief review of the facts and time line is helpful here. On February 27, 2004, the United States Forest Service identified Huntsman as a PRP for the release of hazardous substances at the North Maybe Mine. On January 21, 2005, Huntsman sent a letter to OneBeacon via certified mail, notifying OneBeacon that the Forest Service had identified

Huntsman as a PRP. The letter states,

> We the insured, Huntsman Polymers Corporation (f/k/a
> Rexene Corporation, f/k/a EI Paso Products Co.), hereby
> submit the enclosed environmental claim notification. By
> letter dated February 27, 2004, the U.S. Forest Service gave
> notice to Polymers that Polymers is considered to be a
> potentially responsible party under the federal Superfund for
> the release of hazardous substances at the North Maybe Mine
> located about 13 miles northeast of Soda Springs, Idaho.
>
> Please direct any requests for clarification or additional
> information to James Moore, Vice President and Deputy
> General Counsel, Senior Environmental, Health and Safety
> Counsel for Huntsman, LLC.

*Spillet Decl.*, Ex. 9, Dkt. 42-31. The letter identified Huntsman's policies and included an

attachment which set out similar information.

OneBeacon received the letter, but failed to forward it to its third-party claim

management service, Resolute Management Company. *Id*. For all intents and purposes,

OneBeacon essentially lost the letter. Thus, OneBeacon did not respond to the letter or

assume Huntsman's defense.

In May 2007, Huntsman contacted Resolute claim manager Evelyn Riley. In a

series of emails spanning from May 11, 2007 to June 13, 2007, Resolute requested

information from Huntsman, including a copy of the Forest Service's PRP notification

letter and the January 21, 2005 letter from Huntsman. *Spillet Decl.*, Ex. 10, Dkt. 42-32.

Huntsman sent OneBeacon the PRP letter on or about August 31, 2007.

On December 18, 2007, OneBeacon denied Huntsman's claim, asserting that

Texas law governed and that in Texas property damage is said to "occur" when the

damage becomes readily apparent. Under this view, because the Forest Service did not discover the damage to the North Maybe Mine Site until 2004, the alleged damage would have occurred outside Huntsman's policy periods and there would have been no coverage. However, after the Texas Supreme Court reversed this rule and adopted an injury in fact rule – which holds that property damage "occurs" at the time of the contamination, regardless of when it is discovered – OneBeacon agreed to defend Huntsman under a reservation of rights. As noted above, OneBeacon does not now dispute that it had a duty to defend beginning in July 2007.

On November 26, 2008, after receiving verbal notice that OneBeacon had changed its position on coverage, Huntsman gathered invoices relating to defense costs incurred between its 2004 receipt of the PRP notification and OneBeacon's 2008 assumption of Huntsman's defense. Huntsman sought reimbursement for over $500,000 of defense costs. OneBeacon refused to pay in full and this litigation followed.

Based on these facts, Judge Downs correctly held that the Forest Service's allegations potentially led to proof that environmental contamination occurred at the North Maybe Mine during the relevant policy periods. *Order*, pp.11-12, Dkt. 99. As noted above, that duty continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage. *State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D.Idaho,1986).

Judge Downes may have confused the issue somewhat by then suggesting that although OneBeacon did not explicitly raise the "late notice" defense, the gravamen of its

position was that Huntsman failed to provide sufficient notice of the underlying claim. OneBeacon suggests that Judge Downes misunderstood its position as arguing that Huntsman's notice was insufficient, when it was really arguing that Huntsman never intended to request a defense until July 2007. Regardless, OneBeacon makes clear that it is not asserting a "late notice" defense at this point. *Def's Memo. in Response to Huntsman's Motion for Reconsideration*, p. 11, Dkt. 109. Nor is it arguing that Huntsman's notice was insufficient. *Id*. Instead, OneBeacon asserts that Huntsman did not make a demand under the insurance policy and relinquish control over the defense until July 2007. OneBeacon acknowledges that Huntsman sent a January 2005 letter to OneBeacon, but suggests the letter was only meant as a precautionary notice, not a request for OneBeacon to undertake the defense.

According to OneBeacon, the policy language at play here is the language stating that Huntsman shall not make any voluntary payments, assume any obligation, or incur any expenses, except at its own cost. *Simmonds Decl.,* Ex. 14, p. 5, Dkt. 64-5. OneBeacon states that "[t]he voluntary payments provision refers to the pre-tender defense costs and this, specifically, relates to the voluntary payments provision." *Def's Memo. in Response to Huntsman's Motion for Reconsideration*, p. 11, Dkt. 109. Citing an Illinois U.S. District Court applying Illinois law, OneBeacon contends that this language means that until an insured tenders the defense to the insurer, the insured is responsible for any costs incurred by the insured. *See American Mutual Liab. Ins. Co. v. Beatrice Cos. Inc.,* 924 F.Supp. 861, 873-74 (N.D.Ill. 1996). The rule found in *American Mutual* is based on a

belief that an insured has a choice of defending some or all of a claim on its own based on tactical reasons. According to *American Mutual*, pre-tender defense costs are not recoverable by the insured. *Id*. Applying that rule, OneBeacon argues that there is at least a genuine issue of material fact as to whether Huntsman tendered the defense to OneBeacon before July 2007.

OneBeacon's argument fails for two reasons. First, two years after the District Court in Illinois issued its decision in *American Mutual*, the Illinois Supreme Court itself held that an insured's notice to the insurer of the lawsuit was enough to constitute tender. *Cincinnati Cos. v. West Am. Ins. Co.*, 701 N.E.2d 499, 504 (1998). The Illinois Supreme Court held that "the better rule is one which allows actual notice of a claim to trigger the insurer's duty to defend, irrespective of the level of the insured's sophistication, except where the insured has knowingly forgone the insurer's assistance." Moreover, the Court could find only two other State Supreme Courts which have addressed the issue – New Hampshire and Wisconsin. Both concluded that notice constitutes tender. *White Mountain [Cable] Constr. Co. v. Transamerica Ins. Co.*, 631 A.2d 907, 910 (1993); *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 67 (1996).[1]

Second, there are no Idaho cases adopting the *American Mutual* view – that the

---

[1] Recently, the California Court of Appeals also found that only these three State Supreme Courts had addressed the tender issue. *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal.App.4th 183, 202 (Cal.App. 2 Dist., 2009). The California Court of Appeals also noted intermediate courts in Louisiana and Pennsylvania appear to have reached the same result. *See Cobb v. Empire Fire & Marine Ins. Co.*, 488 So.2d 349, 350 (La.Ct.App.1986); *Widener Univ. v. Fred S. James & Co.*, 537 A.2d 829, 833 (1988).

insured must give more than notice to tender the defense of the case to the insurer. As stressed throughout Idaho Supreme Court opinions, Idaho law is clear that "[t]he terms of an insurance contract dictate the obligations of the parties." *Aetna Cas. And Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1513 (9th Cir. 1991) (Applying Idaho law). Moreover, in Idaho an insurer has a duty to defend if notice is given in the manner required by the policy. *Kootenai County v. Western Cas. And Sur. Co.*, 750 P.2d 87, 90 (Idaho 1988). In this regard, Judge Downes got it right when he stated that a formal tender of a defense is not required in Idaho.

The policy at issue states,

> **9.    Notice of Accident.** When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

*Simmonds Decl.,* Ex. 14, p. 5,t Dkt. 64-5. It does not state that Huntsman must tender the defense to OneBeacon.

It does go on to state that Huntsman "shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident." *Id*. This is the type of language referred to in *American Mutual*. But this language does not create a duty for the insured to give more than notice in order to tender

the defense to the insurer.

In *Fireman's Fund Insurance Companies v. Ex-Cell-O Corp., et al.,* the case cited in *American Mutual* for the concept of pre-tender defense costs, the court recognized "a split of authority on whether notice alone triggers the duty to defend, or whether the insured must also tender the defense either formally or in some informal fashion that indicates a desire for the insurer to undertake the defense." 790 F.Supp. 1318, 1327 (E.D.Mich 1992). Although the court in *Ex-Cell-O* ultimately determined that it believed the Michigan Supreme Court would find that a tender of defense is required (at least for sophisticated parties), it acknowledged that other courts, including the California Court of Appeals, have held that "an insurer must furnish a defense when it learns facts creating potential liability." *Id.* at 1328 (Citing *Giddings v. Industrial Indem. Co.*, 112 Cal.App.3d 213, 217 (1980) (Internal quotations omitted)).

Moreover, the California Court of Appeals has recently addressed this issue in a case involving OneBeacon. It explained that sound public policy does not support a rule requiring an insured to expressly request a defense in order to trigger the duty to defend. *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal.App.4th 183, 202 (Cal.App. 2 Dist., 2009).[2] The court stated that tender should be defined only as giving

---

[2] The Court recognizes that the California Court of Appeals is not the Supreme Court of California, but it is binding authority on all California trial courts. However, the California Court of Appeals decision is relatively recent, 2009, and it does not indicate any disagreement with the Supreme Court of California. Likewise, this Court could not find a California Supreme Court case disagreeing with the findings in the Court of Appeals case. More importantly, this Court is not relying on the case as binding authority, but is citing to it as persuasive reasoning of how the Idaho Supreme Court would address the tender of defense issue due to the similarity between

the insurer notice and an opportunity to defend. *Id*. The court gave three reasons in support of its definition of tender: (1) it clarifies the duties of the parties early in the litigation; (2) it acknowledges the greater knowledge and sophistication of the insurer; and (3) it places no significant burden on insurers. *Id*. The court explained that once notice is given, "it should be the responsibility of the insurer to contact the insured to determine whether the insurer's assistance in the suit is required." *Id*. (Internal quotations and citation omitted). "When notified of the insured's potential liability under the suit, the insurer can simply ask the insured if the insurer's involvement is desired, thus eliminating any uncertainty on the question." *Id*. (Internal quotation and citation omitted). This also prevents the creation of potential loopholes for insurers, and protects the bargain struck by the parties in the insurance policy. *Id*. "The insured paid for the insurer's promise to defend the insured for covered claims, and the insured's ignorance regarding the language the insured must use to invoke that coverage should not negate the bargain." *Id*. The California court would "not create a legal rule that presumes an insured, whether a company or an individual, is equally sophisticated, knowing its contractual right to coverage and when and how to invoke it." *Id*. at 202-203.

The California court concluded that once an insured provides its insurer with notice of a suit and an opportunity to defend, it has tendered the defense. *Id*. at 203. "[T]he requisite notice is notice sufficient to permit the insurer to locate and defend the

_____

California and Idaho law on the duty to defend.

lawsuit; and in order to have actual notice sufficient to locate and defend a suit, the insurer must know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies." *Id.* (Internal quotations and citations omitted).

The California cases are significant here because California law regarding application of the duty to defend is almost identical to Idaho law. The Idaho Supreme Court has stated that "[t]he duty to defend arises upon the filing of a complaint containing allegations that, in whole or in part and read broadly, reveal a potential for liability that would be covered by the insured's policy." *Esterovich v. City of Kellogg*, 80 P.3d 1040, 1042 (Idaho 2003). There is no indication that the Idaho Supreme Court would adopt a requirement that the insured must make a formal tender of the defense, particularly where no such language is found in the policy. And there is no such language in the policies at issue here. Instead, the Idaho Supreme Court would likely agree with the holding by the California Court of Appeals that an insured tenders the defense when it provides the insurer with notice and an opportunity to defend.

Because Judge Downes conflated the insufficient/late notice defense argument and the pre-tender defense argument, to some degree, the Court will reconsider the decision by indicating that the insufficient/late notice defense is not at issue here. To the degree Judge Downes ruled on the insufficient/late notice defense, the order is vacated. But with respect to the pre-tender defense argument, the Court finds that Huntsman was not required to tender the defense as suggested by OneBeacon. The January 2005 letter gave

OneBeacon notice of the suit and an opportunity to defend. It explained that Huntsman was submitting an environmental claim notification, and that the United States Forest Service considered Huntsman a PRP for the release of hazardous substances at the North Maybe Mine located about 13 miles northeast of Soda Springs, Idaho. It also specifically gave OneBeacon contact information for any requests for clarification or additional information. After OneBeacon received the January 2005 letter from Huntsman, the burden was on OneBeacon to contact Huntsman to clarify whether its assistance in the suit was required; not the other way around. *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal.App.4th 183, 202 (Cal.App. 2 Dist., 2009) (Noting that once notice is given, it should be the responsibility of the insurer to contact the insured to determine whether the insurer's assistance in the suit is required). Accordingly, OneBeacon must pay Huntsman's defense costs from January 21, 2005 forward.

### B.     *Allocation of Defense Costs*

Both parties agree that Judge Downes should have issued a decision on the allocation of defense costs. There is some discussion about whether the Court confused the indemnity and defense costs, but Huntsman makes clear that it only sought a determination as to defense costs. A review of Huntsman's motion for summary judgment supports Huntsman's view.

OneBeacon states that it is not surprising that Judge Downes addressed indemnity costs because that issue was part of the motion to certify. However, OneBeacon is somewhat equivocal about whether the Court should address the issue, stating only that

they invite the Court to reconsider the totality of Judge Downes' order. Because Huntsman only sought summary judgment on allocation of defense costs, the Court will limit its decision to that issue, and not address the indemnity issue since it is not ripe for decision.

When there is an on-going and progressive injury, and where there are multiple insurance policies, the question arises as to whether each policy is liable for the entirety of the defense or just that portion of the defense attributable to that policy. There are two competing theories for addressing this question, and Idaho has not specifically adopted either.

The first is generally referred to as the "joint and several" approach. Under this theory, any insurance company which issued a policy where coverage is triggered is jointly and severally liable for the entire cost of the defense. The second theory is referred to as the "pro rata" theory. Under this theory, defense costs are allocated among all triggered policies based on some objective factor. As expected, Huntsman argues that the joint and several theory applies, and OneBeacon argues that the pro rata theory applies.

The most important consideration in determining which theory applies is the terms of the insurance contracts. As explained above, in Idaho, "the terms of an insurance contract dictate the obligations of the parties." *Aetna Cas. & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1512 (9th Cir. 1991). This is not an uncommon approach. Most states agree that interpretation of an insurance contract begins with the language of the policy. *See e.g., Boston Gas Co. v. Century Indem. Co.*, 910 N.E.2d 290, 304 (Mass. 2009).

Idaho's strong reliance on the actual language of a contract dictates that, in determining whether the "joint and several" theory or the "pro rata" theory applies, the Idaho Supreme Court would start by looking at the language in the policies.

Here, both parties point the court to the same general language in one of the policies. It states that OneBeacon "shall . . . defend any suit against [Huntsman] alleging such injury . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . ." *Simmonds Decl.*, Ex. 14, Dkt. 64-5. It further states that OneBeacon "shall . . . pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment" until OneBeacon reaches its policy limit. *Id.*

The policy clearly states that OneBeacon will defend any suit and pay all expenses in connection with the defense of such suit. OneBeacon correctly notes that the policy does not state that OneBeacon will "pay all expenses," period; it states that OneBeacon will "pay all expenses incurred by [OneBeacon.]" *Id.* But this is a distinction without a difference. In Idaho, as in most states, a contract must be interpreted as a whole. *Bybee v. Isaac*, 178 P.3d 616, 621 (Idaho 2008). When read as a whole, the policy states that OneBeacon must defend all suits and pay all its expenses in doing so. Any other interpretation of the contract is unreasonable. Accordingly, for purposes of this case, the Court is confident that Idaho courts would find OneBeacon jointly and severally liable for the defense costs.

### C.     Reimbursement of Defense Costs

As discussed above, Judge Downes only addressed the allocation of defense costs in dicta. In that section of the opinion, Judge Downes also made a statement that if there is ultimately no coverage in this case, the issue shifts from allocation to recoupment. Huntsman asks the Court to clarify this statement, and conclude that OneBeacon is not entitled to reimbursement of defense costs if the Court ultimately determines there is no coverage under the policies.

Another Judge in this District, Edward J. Lodge, has addressed the issue of whether an insurer is entitled to reimbursement of defense costs if the insurer ultimately had no potential liability and no duty to defend. In *St. Paul Fire & Marine Ins. Co. v. Holland Realty, Inc.*, 2008 WL 3255645, *6 (D.Idaho 2008), the court began by noting that there are no Idaho cases addressing the issue. The same is still true today. The court then went on to consider the different approaches taken by various courts regarding the reimbursement of defense costs. Some courts uphold unilateral reservation of rights to seek reimbursement based on an implied contract when the insured accepts the defense. *Walbrook Insurance Co. v. Goshgarian & Goshgarian*, 726 F.Supp. 777, 784 (C.D.Cal.1989). Other courts have allowed reimbursement under an unjust enrichment theory. *Buss v. Superior Court*, 939 P.2d 766 (Cal.1997). But another approach requires an express provision in the policy before an insurer is entitled to reimbursement. *General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1101 (Ill.2005).

Consistent with the views expressed by Judge Lodge in *St. Paul,* the Court finds that the Idaho appellate courts would conclude that where "the terms of an insurance

contract dictate the obligations of the parties," reimbursement is not allowed unless it is spelled out in the contract. *See Aetna Cas. & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1512 (9th Cir. 1991). The Court has already explained that Idaho draws a distinction between a duty to defend and a duty to indemnify. *State of Idaho v. Bunker Hill Co.*, 647 F. Supp. 1064, 1068 (D. Idaho 1986) (quoting *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440 (Idaho Ct. App. 1984)). A natural extension of this distinction is that an insurer may only recoup its defense costs, if it has included an express provision for reimbursement in the terms of the policy. Moreover, as pointed out in *St. Paul*, a reservation of rights letter can only preserve rights already agreed to by the parties. *Mutual of Enumclaw v. Harvey*, 772 P.2d 216, 220 (Idaho 1989).

Here, the parties have not identified any provision in the policies which provide OneBeacon with a right to reimbursement. In the absence of such a provision, OneBeacon is not entitled to seek reimbursement for expenses incurred under its duty to defend even if it is ultimately determined that there is no coverage under the policies.

## ORDER

**IT IS ORDERED:**

1.    Defendants' Motion for Reconsideration of the Court's Denial of Their Motions for Summary Judgment and to Certify State Law Questions (Dkt. 104) and Plaintiff Huntsman Advanced Materials LLC's Motion for Reconsideration (Dkt. 107) are **GRANTED in part** and **DENIED in part** as explained above.

2.	Defendants' Motion to Lift Stay, or in the Alternative, for Reconsideration of Granting of Plaintiff's Motion to Stay Indemnity Portion of The Case (Dkt. 105) is **DENIED**.



DATED:  **February 13, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge