UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HUNTSMAN ADVANCED MATERIALS LLC,<br><br>            Plaintiff,<br><br>           v.<br><br>ONEBEACON AMERICA INSURANCE COMPANY and SPARTA INSURANCE COMPANY, formerly known as AMERICAN EMPLOYERS' INSURANCE COMPANY,<br><br>            Defendant. | Case No. 4:08-CV-00229-E-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Pending before the Court is a motion to intervene filed by First State Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company f/k/a New York Underwriters Insurance Company, Nutmeg Insurance Company, and Twin City Fire Insurance Company (collectively, Hartford). (Dkt. 190.) The motion is fully briefed and at issue. For the reasons below, the Court will grant the motion.

# BACKGROUND

## 1.    Factual Background

On February 27, 2004, the U.S. Forest Service notified Huntsman Advanced Materials LLC (Huntsman) that it was a Potentially Responsible Party under CERCLA Section 107(a) (USDAFS claim). Dkt. 1. In the USDAFS claim, the Forest Service asserted that Huntsman and its predecessors at the North Maybe Phosphate Mine Site had conducted mining operations that resulted in the release or threatened release of hazardous substances or contaminates. (Dkt. 88-1.)

Since February 23, 2010, pursuant to CERCLA Section 106(a), Huntsman has been subject to a Unilateral Administrative Order requiring it conduct a Remedial Investigation/Feasibility Study (RI/FS) of the West Ridge Operable Unit at the North Maybe Mine Site. (Dkt. 75-3.) Though it was initially anticipated that the RI/FS would be completed within two and a half years, it has taken much longer. (Dkt. 81.) The remedial investigation — conducted pursuant to statute "to collect data necessary to adequately characterize the site for the purpose of developing and evaluating effective remedial alternatives" — was completed in 2016. (*See* 40 C.F.R. § 300.430(d)(1); Dkt. 191 at 2.) Baseline risk assessments and the feasibility study — conducted to determine whether and what remedial action is necessary — remain ongoing. (*See* 40 C.F.R. § 300.430(e)(1); Dkt. 173 at 4.) At present, the targeted completion date of the feasibility study is January 2022. (Dkt 185.)

Huntsman is the successor in interest of commercial general liability insurance policies purchased from OneBeacon American Insurance Company (OneBeacon) in the 1960s and 1970s. (Dkt. 1 at 4.) Huntsman tendered a claim to OneBeacon on January 21, 2005 seeking defense and indemnity with respect to Huntsman's environmental liabilities arising out of the USDAFS claim. (Dkt. 1 at 8.) OneBeacon denied coverage in 2007. *Id.* at 9. Huntsman is also the successor in interest of commercial general liability insurance policies purchased from Hartford in the 1970s and 1980s. (Dkt. 190-1 at 8.) Huntsman notified Hartford of the USDAFS claim; in 2006, Hartford denied coverage. (Dkt. 191-1 at 2.)

## 2. Procedural History

The underlying case involves an action brought May 27, 2008, by Huntsman against OneBeacon, seeking a declaratory judgment of OneBeacon's duty to defend and indemnify Huntsman with respect to Huntsman's liabilities arising out of the USDAFS Claim. (Dkt. 1.) In 2012, Hartford was brought into this action via OneBeacon's Third-Party Complaint. (Dkt. 134.) After a confidential settlement between the insurers relating solely to defense costs for the USDAFS Claim, Hartford was dismissed from this action. (Dkt. 160.)

On February 19, 2010, Judge Downes, writing for this Court, issued a stay on all issues of indemnity in this action, pending the completion of the RI/FS. (Dkt. 81.) At that time, it was expected that the RI/FS would be completed within two and a half years and would determine whether evidence of contamination and its source existed. *Id.* at 6-7.

However, given the long and ongoing delay in completing the RI/FS, on November 5, 2018, this Court partially lifted the stay to allow discovery with an eye toward OneBeacon filing a motion of summary judgment on the issue of liability. (Dkt. 185.)

Hartford now seeks intervention as of right and permissive intervention. (Dkt. 190.) Huntsman opposes intervention on the grounds that Hartford's proposed counterclaim fails to present an actual case or controversy as required by the Declaratory Judgment Act and asserts the issue is thus not ripe for adjudication. (Dkt. 191.) The Court will address the merits of these arguments below.

## LEGAL STANDARD

### 1. Ripe Case of Actual Controversy

Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration" so long as it is "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" refers to the same cases and controversies that are justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). Thus, a case must be ripe for adjudication for the court to have subject-matter jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (citation omitted).

In private party contract disputes, the traditional ripeness standard inquires whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Claims involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all" are generally unripe. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010) (citations omitted).

## 2. Intervention

Federal Rule of Civil Procedure 24 provides for both intervention as a matter of right and permissive intervention. Rule 24(a)(2) permits intervention as of right when: (1) the motion is timely; (2) the applicant claims a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). Generally, the court must construe Rule 24(a) liberally in favor of intervenors, relying on "practical and equitable concerns," rather than technical distinctions. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Although this standard is construed liberally, "the applicant bears the burden of showing that each of the four elements is met." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

Rule 24(b)(1) allows permissive intervention if: (1) the motion is timely; (2) the applicant's claim shares a common question of law or fact with the main action; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly*

*v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). The court may also consider whether "intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.* In addition, the court can examine "the nature and extent of the intervenors' interest," and "whether the intervenors' interests are adequately represented by other parties." *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977).

Rule 24(c) requires that a motion to intervene be accompanied by a pleading setting forth the claim for which intervention is sought. The court considers only whether parties have alleged "a legally sufficient claim," and not whether they are "likely to prevail on the merits." *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988).

## ANALYSIS

### 1. A Single Contingency Does Not Prevent Hartford's Claim Against Huntsman from Being Ripe for Determination.

Huntsman contends there is no case or controversy ripe for the declaratory judgment in Hartford's proposed counterclaim.

First, Huntsman argues that the duty to indemnify cannot be decided until there is a final determination of Huntsman's liability regarding the USDAFS claim. (Dkt. 191 at 4.) This argument is an attempt to relitigate the Court's decision to lift the stay. (*See* Dkt. 173.) As the Court previously found, a ripe case and controversy exists absent a final decision from the Forest Service about the extent of Huntsman's liability. (Dkt. 185.)

Second, Huntsman argues that there is not a ripe case or controversy to adjudicate because Huntsman has not yet asserted a claim for indemnity against Hartford. (Dkt 191 at 2.) While Huntsman has not yet sued Hartford, Huntsman indicated in its own briefing that Huntsman notified Hartford of the USDAFS claim and, in 2006, Hartford denied coverage. (Dkt. 191-1 at 2.)

With respect to Huntsman's second argument, the caselaw provides guidance on when a ripe case or controversy exists between an insurer and its insured. "A dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citations omitted). Although Huntsman contends no dispute exists until the insured asserts a claim for indemnity against the insurer in court, the caselaw does not support this argument.

Rather, the caselaw indicates that an insured need not have filed an action for contract damages or equitable relief for an actual controversy to exist under the Declaratory Judgment Act. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); *MedImmune, Inc.*, 549 U.S. at 1227. The Ninth Circuit has held that a ripe dispute exists when an insurer faces "the possibility of having to honor a policy no longer in force." *MedImmune, Inc.*, 549 U.S. at 1223. Similarly, in *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, the Eighth Circuit held that an insured's clear demand for payment of defense and indemnity costs and an insurer's dispute of those demands constituted a "live justiciable controversy between the parties sufficient to invoke the jurisdiction of the

court" even though the insured had not brought suit against the insurer. 968 F.2d 707, 709-11 (8th Cir. 1992).

The caselaw further makes clear that a ripe controversy can exist even when contingencies are present. In an insurer's action for declaratory judgment, the United States District Court for the Northern District of Georgia held in that a justiciable controversy arose from the "possibility or conjecture of a future lawsuit arising from insured's refusal to accept denial of coverage." *Am. Ins. Co. v. Evercare Co.*, 299 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010). *See also Assoc. Indem. Corp. v. Fairchild Indus., Inc.,* 961 F.2d 32, 35 (2d Cir. 1992) (citation and internal quotation marks omitted) ("That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur[ ]. Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.").

Huntsman contends that it should be permitted to choose whether and under which policies to seek coverage from Hartford for some or all of the liability arising out of the USDAFS claim. This is unpersuasive because although Huntsman has not sued Hartford for coverage, it has notified Hartford of the USDAFS claim and Hartford has denied coverage. Unlike the cases in which claims were unripe because insurers had not yet denied coverage, in this instance, both parties have already indicated their positions on Hartford's liability. Since the parties have taken these adverse positions, the Court need

not wait for Huntsman to sue Hartford. The single contingency in this case — whether Huntsman will eventually sue Hartford — is exclusively within Huntsman's control and will almost assuredly occur. *See, e.g., Century Indem. Co. v. Marine Grp., LLC*, 848 F. Supp. 2d 1229, 1235 (D. Or. 2012) ("A claim is ripe where there is substantial likelihood that the dispute will reach the [additional] policies."). The claim is therefore appropriate for adjudication under the Declaratory Judgments Act. Accordingly, the Court finds that a justiciable case and controversy exists, satisfying Article III and the Declaratory Judgment Act.

### 2. Hartford is Entitled to Intervene.

Huntsman does not truly dispute that intervention is appropriate here. Hartford has established that it is entitled to intervention as a matter right or, in the alternative, permissive intervention.

### A. *Intervention as of Right*

As discussed above, Rule 24(a)(2) permits intervention as a matter of right when: (1) the motion is timely; (2) the applicant claims a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action. *Wilderness Soc.*, 630 F.3d, at 1177. In the light of the Ninth Circuit's policy of liberal intervention and the minimal showing Hartford must make, as well as the equitable principles behind permitting a party with a significant,

practical interest in the case to intervene, the Court finds that Hartford meets all the requirements for intervention as of right.

First, Hartford's application is timely considering (1) the stage of the proceedings at which intervention is sought; (2) prejudice to the other parties, and (3) the reason for and length of any delay. *See United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004). Here, Hartford promptly filed its motion to intervene early in the proceedings after the stay was lifted. There is no prejudice. Nor was there any delay in filing that must be explained.

Next, Hartford has a significant protectable interest that the disposition of this action may impair its ability to protect. A "significant protectable interest," requires only that Hartford: (1) assert an interest that is protected by law, and (2) demonstrate a "relationship" between that interest and the claims against OneBeacon. *State of California v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). A party's impaired ability to protect its interest is put in practical rather than legal terms and is satisfied "whenever disposition of the action would put the applicant at a practical disadvantage in protecting its interest." *Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp. as Receiver for First Bank of Idaho*, No. 1:10-CV-377-BLW, 2010 WL 5391442, at *2 (D. Idaho Dec. 17, 2010).

Here, Hartford's interest in its possible coverage obligations is protected by law and related to OneBeacon's claim. As a coinsurer of Huntsman and a party sharing in Huntsman's defense costs for the underlying USDAFS Claim, Hartford's interest could,

as a practical matter, be impaired or impeded by the ultimate remedy sought by OneBeacon. Undoubtedly, if the Court were to make a coverage determination for OneBeacon, Hartford's interest would be impaired as a coinsurer of Huntsman and cofunder of Huntsman's defense.

Finally, the existing parties inadequately represent Hartford's interest. In determining the adequacy of representation, the court considers whether: (1) the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) the present party is capable and willing to make such arguments; and (3) a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cateyano,* 324 F.3d 1078, 1086 (9th Cir. 2003). The burden on proposed intervenors in showing inadequate representation is minimal. *Id.*

In this action, OneBeacon's likely course of defense would not make all of Hartford's arguments. Nor, is OneBeacon capable and willing to make such arguments, because OneBeacon's policies are distinct from Hartford's policies and have significant differences in their terms. Hartford's policies thus require separate representation. Similarly, Huntsman's position on Hartford's coverage obligations is adverse to Hartford's, making it unlikely that Huntsman will capably and willingly make arguments representing Hartford's interests in this action.

**B.** *Permissive Intervention*

In the alternative to intervention as of right, Rule 24(b) allows permissive intervention if: (1) the intervenor shares a common question of law or fact with the main

action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. Fed. R. Civ. P. 24(b)(2); *Donnelly*, 159 F.3d at 412. The Court may use its discretion as to whether allowing an intervention will "unduly delay or prejudice" the rights of the original parties. Fed. R. Civ. P. 24(b)(3).

The Court finds that Hartford meets all the requirements for permissive intervention. As demonstrated above, the motion is timely. The Court has an independent basis for jurisdiction under 28 U.S.C. § 1332. As a coinsurer of Huntsman, Hartford disputes the same issue of coverage for the same underlying claims that OneBeacon currently disputes. If Hartford sued Huntsman separately, it would most likely bring similar or identical claims and rely on similar or identical facts. Hartford therefore shares a common question of law or fact with the present action. The Court does not believe that Hartford's participation will delay or prejudice the proceedings.

## ORDER

**IT IS HEREBY ORDERED:**

1.  Hartford's Motion for Intervention (Dkt. 190) is **GRANTED**.

DATED: August 2, 2019

B. Lynn Winmill
U.S. District Court Judge